**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **LINDA BERINGER, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **No.  8:07-CV-01657-SDM-MSS** |
| **vs.** | ) ) | |
| **CERTEGY CHECK SERVICES, INC.** | ) ) | |
| **Defendant.** | ) | |
| | | |
| **DANA M. LOCKWOOD, on behalf of herself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **No.  8:07-cv-01434-SDM-TGW** |
| **vs.** | ) ) | |
| **CERTEGY CHECK SERVICES, INC.** | ) ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND PUBLISHING OF NOTICE, AND SETTING OF A FINAL FAIRNESS HEARING**

NOW COME plaintiffs Linda Beringer and Dana M. Lockwood ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement and stated below), by and through Ben Barnow, Barnow and Associates, P.C.; Lance A. Harke, Harke & Clasby LLP; and Ralph K. Phalen, Ralph K. Phalen, Attorney at Law (collectively, "Co-Lead Settlement Class Counsel"), and as their Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Publishing of Notice, and Setting of a Final Fairness Hearing, state as follows:

- 1 -

## I.        THE LITIGATION

On July 3, 2007 and July 25, 2007, Certegy (as defined in the attached Settlement Agreement) publicly announced that a database administrator that worked for Certegy improperly and without authorization took consumer records and sold them to a third party for marketing purposes; the number of consumer records taken and subsequently disseminated numbered in the millions (hereinafter, "Stolen Records"). The employee was terminated upon discovery of his conduct, and has since plead guilty in a criminal action pursuant to a plea agreement. The Stolen Records consisted of identifying information and, in some cases, checking account numbers, credit/debit card numbers and/or dates of birth of Class members, but, as represented by Certegy, did not include social security numbers or driver's license numbers.

On August 14, 2007, Plaintiff Dana M. Lockwood filed a lawsuit against Certegy. *Lockwood v. Certegy Check Services, Inc.*, Case No. 07-CV-01434 (M.D. Fla.). Meanwhile, on September 13, 2007, Plaintiff Linda Beringer also filed a lawsuit against Certegy. *Beringer v. Certegy, Inc.*, Case No. 07-CV-01657 (M.D. Fla.). A number of other lawsuits were filed in federal courts, asserting claims against Certegy in relation to the Stolen Records.[1] Although the lawsuits had some variances, the claims asserted included:  negligence, breach of implied contract, invasion of privacy, intentional violations of the Fair Credit Reporting Act ("FCRA"), and negligent violations of the FCRA. The lawsuits named, as defendants, Certegy Check Services, Inc., Fidelity National Information Services, Inc., S & S Computer Services, Inc., and

---

[1]*McCall v. Certegy Check Services Inc.*, Case No. 4:07-0578-CV-W-FJG (W.D. Mo.); *Borreson v. Sullivan, et al.*, Case No. CV-07-05309 (C.D. Cal.); *Jaramillo v. Certegy Check Services, Inc.*, Case No. 07-CV-5018 (N.D. Ill.); *Sellers v. Certegy Check Services, Inc.*, Case No. 07-CV-01020 (M.D. Fla.).

William G. Sullivan. On November 5, 2007, Certegy filed a motion to dismiss in *Borreson v. Sullivan, et al.*, Case No. CV-07-05309 (C.D. Cal.).  Certegy's motion is still pending.  On December 12, 2007, Certegy similarly filed a motion to dismiss in *McCall v. Certegy Check Services Inc.*, Case No. 4:07-0578-CV-W-FJG (W.D. Mo.).  This motion is also still pending. The *Sellers* case has since been transferred to this Court, and stays or continuances have been entered in the various pending cases based on the settlement here.

## II.      SUMMARY OF THE SETTLEMENT

After extensive and arm's-length negotiations, the Settlement Agreement has been reached. It is an excellent one, providing valuable and important benefits for Settlement Class Members, and readily meets the standard for preliminary approval—that is, it is well within the required range of fair, reasonable, and adequate. *Manual for Complex Litig.* § 30.41 at 237 (explaining the standard for preliminary approval); s*ee also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-85 (D. Md. 1983). A copy of the Settlement Agreement is attached hereto as Exhibit 1.

The Settling Parties have entered into the present Settlement Agreement, which provides for:

(1)      one year of Experian's "**Triple Alert**[SM]" credit monitoring service, which includes $10,000 in identity theft insurance, for each of the approximately 1.25 million Settlement Class Members whose credit or debit card numbers or account information was included in the Stolen Records and who elect said benefit;

(2)      two years of Bank Monitoring for each of the approximately 4.25 million Settlement Class Members whose checking or other demand deposit account numbers or account information was included in the Stolen Records and who elect said benefit;

(3)     an additional provision for cash reimbursement of identity theft losses, up to a combined total of $4 million, and each Settlement Class Member who is found to have suffered such identity theft will have made available to them an additional year of credit monitoring;

(4)     up to $180 cash reimbursement for credit monitoring services costs and up to $40 cash reimbursement for check replacement costs incurred by each Settlement Class Member, up to a combined total of $1 million;

(5)     substantially enhanced security measures implemented by Certegy to prevent future thefts of data;

(6)     dispute resolution at Certegy's expense through JAMS/Endispute for those Settlement Class Members who have submitted a claim for identity theft losses and/or reimbursement of check replacement and credit monitoring services expenses, have had their claim denied, and who dispute Certegy's denial of said claim; and

(7)     payment of notice, claims administration costs, and attorneys' fees, costs, expenses, and Representative Plaintiff and Named-Plaintiff incentive awards.

Therefore, by the accompanying motion, Representative Plaintiffs and Co-Lead Settlement Class Counsel respectfully move the Court for entry of an order:  (1) preliminarily approving the settlement set forth in the Settlement Agreement; (2) approving the proposed Notice Program to the Settlement Class; (3) appointing Hilsoft Notifications, Souderton, Pennsylvania, as the Notice Specialist; (4) appointing Epiq Systems Class Action & Claims Solutions as Claims Administrator; (5) certifying the Settlement Class; (6) appointing Linda Beringer and Dana M. Lockwood as the Representative Plaintiffs; (7) appointing Ben Barnow, Barnow and Associates, P.C.; Lance A. Harke, Harke & Clasby LLP; and Ralph K. Phalen, Ralph K. Phalen, Attorney at Law, as Co-Lead Settlement Class Counsel; and (8) scheduling a hearing to consider final approval of the settlement and any related matters.

## III.     CERTIFICATION OF A SETTLEMENT CLASS

"The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims," where the claims are small. *In re Prudential Sec. Limited Partnership Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); s*ee also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (holding that courts should favor the use of devices, including settlement classes, that foster negotiated conclusions to class actions). In fact, a settlement class in complex litigation "actually enhances absent class members' opt-out rights because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential*, 163 F.R.D. at 205.

Accordingly, the parties have stipulated to the definition of a Settlement Class.  Subject to the exclusions that follow and for settlement purposes only (Settlement Agreement at ¶ 2.4), the "Settlement Class" is defined as follows:

> [A]ll persons whose credit card, debit card, checking or demand deposit account numbers or information was included in the Databases, including Bank Consumer Members and Credit Card Consumer Members.

*Id.* at ¶ 1.20. The Notice will reference the letter that Certegy previously sent to Settlement Class Members, thus identifying their Class membership. *See* Summary Notice, attached hereto as part of the Notice Plan at Exhibit 2. Bank Consumer Members means "those Settlement Class Members to whom Certegy mailed notice that their checking or other demand deposit account numbers, or checking or other demand deposit account information, was included in the Stolen Records." Settlement Agreement at ¶ 1.1. Credit Card Consumer Members means "those Settlement Class Members to whom Certegy mailed notice that their credit or debit card numbers, or credit or debit card account information, was included in the Stolen Records." *Id.* at

¶ 1.7. Excluded from the definition of the Settlement Class are: (i) Certegy and its officers and directors; (ii) the Court presiding over any motion to approve this Settlement Agreement; (iii) any Person or entity named as a defendant in any of the pending lawsuits in the concerned Litigation; (iv) those Persons who timely and validly request exclusion from the Settlement Class; and (v) any person or entity whose information was included in the Stolen Records, but was intentionally falsified. *Id.* at ¶ 1.20.

**A.    The Proposed Settlement Class Meets All the Requirements for Class Certification Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure.**

The Settlement Class meets all of the requirements for class certification pursuant to Federal Rule of Civil Procedure Rule 23(a). Rule 23(a) sets forth the following prerequisites for certifying a class:  "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." F.R.C.P., Rule 23(a).

First, since private, non-public, financial and personal information was compromised for approximately 5.5 million individuals throughout the United States, the Settlement Class is clearly so numerous that joinder of all members is impractical.

Second, the same legal and factual questions are present for each member of the Settlement Class. "The threshold of 'commonality,' is not high." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted).  Commonality is found where there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001).  The questions of law and fact common to the Settlement Class, include, *inter alia*:

- whether Certegy acted negligently in collecting and storing Settlement Class Members' personal and financial information;

- whether Certegy is a consumer reporting agency as defined by 15 U.S.C. § 1681a;

- whether Certegy violated the FCRA;

- whether Representative Plaintiffs and other members of the Settlement Class have sustained damages, and, if so, the proper measure of those damages; and

- whether Representative Plaintiffs and other members of the Settlement Class should be awarded statutory damages.

In regard to the third requirement, "[a] sufficient nexus is established [to show typicality] if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. at 89 (citations omitted). The claims of the Representative Plaintiffs are typical of the claims of the members of the Settlement Class, as they all had their private, non-public, financial and personal information compromised, and their claims arise from the same course of uniform conduct of Certegy.

The fourth prerequisite for certification is that the representative parties will fairly and adequately protect the interests of the class. Satisfaction of this issue requires considering: "(1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation." *Fabricant*, 202 F.R.D. at 314. The interests of Representative Plaintiffs here do not conflict with the interests of any other Settlement Class Member, as they all seek relief from the theft of their private, non-public, financial and personal information. Further, as demonstrated by the efforts of Co-Lead Settlement Class Counsel to date, they have competently and vigorously protected the interests of Representative Plaintiffs and Settlement Class Members, and will continue to do so.

**B.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(1)(A) and (b)(3).**

"In addition to the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, the party seeking to obtain class certification must demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (citations omitted). The Settlement Class here satisfies the requirements of Rule 23(b)(1)(A) and (b)(3).

As required by Rule 23(b)(1)(A), a class action will prevent possible inconsistent or varying adjudications which could occur if individual members had to prosecute separate actions. The present settlement eliminates any such concerns. The Settlement Class also satisfies the requirements of Rule 23(b)(3). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. at 92 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "The superiority analysis dovetails with the predominance analysis." *Id.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 91 (*citing Amchem*, 521 U.S. at 623). These factors are readily satisfied here. For example, whether Certegy's conduct in the events leading up to and during the data theft was improper, whether this conduct violated the laws set forth in the various complaints, and whether the conduct caused damage to members of the Settlement Class, are all common questions that predominate over any individual ones that may exist. Additionally, a class action is superior to

other available methods, as the amount of damages incurred by each Settlement Class Member is insufficient to justify the costs of pursuing an individual action. *Id.* at 92.

## IV.   TERMS OF THE SETTLEMENT AGREEMENT

### A.   Credit and Bank Monitoring.

Certegy shall make available to those Settlement Class Members whose credit or debit card numbers or account information, was included in the Stolen Records, one (1) year of Credit Monitoring from the Experian "**Triple Alert**[SM]" service, which includes daily monitoring of the subscriber's credit reports and $10,000 in identity theft insurance.[2]   Settlement Agreement at ¶ 2.1(a).   The availability of said credit monitoring provides significant benefits to Settlement Class Members.   The Settlement Class Member claimant here gets a benefit that would cost them $59.40.   The total benefit available to these Settlement Class Members is approximately $74 million.[3]   Certegy shall make available to those Settlement Class Members whose checking or other demand deposit account numbers or account information was included in the Stolen Records, two (2) years of Bank Monitoring.   *Id.*   The Bank Monitoring will employ a two-part process to monitor checks, drafts, and automated clearing house transfers drawn on Bank Consumer Members' checking or other demand deposit accounts that are presented or initiated at

---

[2] For Settlement Class Members residing in New York, where such identity theft insurance is not currently available from Experian, said members shall receive the "**Triple Alert**[SM]" service without such insurance coverage, but they can still access the $4 million fund provided for identity theft losses, for a total of $20,000 in identity theft protection.

[3] The cost of Experian's Triple Alert service to members of the general public is $4.95 per month.   Thus, the total available benefits provided for under this portion of the Settlement Agreement amounts to $74,250,000 ($4.95 X 12 months = $59.40/year; 1.25 million Settlement Class Members X $59.40 = $74,250,000).   This does not mean that Certegy will be required to spend that amount or that all Settlement Class Members will file a claim; it means that it is the value of the benefit being made available to Settlement Class Members.

institutions that subscribe to Certegy Check's authorization services (the "Accounts").  *See* Settlement Agreement, Exhibit C.

The first part involves real-time activity inquiries, performed twice a week, whereby Certegy Check (as defined in the Settlement Agreement) will monitor the Accounts for suspected fraud.  If any potentially fraudulent activity is identified, the Account will then be forwarded to Certegy Check's investigation team.  The second part of the Bank Monitoring process involves the comparison of claims (i.e. returned items) to the Accounts to identify potentially fraudulent trends.  Certegy Check will analyze claims transactions that are labeled by the Bank Consumer Members' financial institution as non-fraud claims to determine whether the claim may actually be fraudulent; if a claim is identified as fraudulent, it too will be forwarded to Certegy Check's investigations team.  If an Account is forwarded to Certegy Check's investigation team, Certegy Check will contact the Bank Consumer Member to verify that the concerned Account activity was indeed authorized by them.  If the concerned account activity is found to be unauthorized, Certegy Check will block all activity for that Account and advise the Bank Consumer Member to take appropriate action (e.g., instructing their financial institution to close the Account).

It is believed that there is no comparable product on the market to which these Settlement Class Members could turn for bank account monitoring.  The approval of this settlement will afford this additional protection.  It can be fairly argued that the value of said Bank Monitoring is as much as the Credit Monitoring.  The Bank Monitoring provided for under the settlement, under such a comparison, shows an available value of benefits to Settlement Class Members of approximately $500 million.[4]

---

[4]  Experian's Triple Alert service costs $4.95 per month.  Using that credit monitoring service as a comparison, the total available value of benefits under this portion of the Settlement

**B.      Cash Reimbursement of Identity Theft Losses.**

Certegy shall reimburse each Settlement Class Member, up to a total of $20,000.00,[5] for

any actual and unreimbursed out-of-pocket loss (other than the expenditure of time) that resulted

from identity theft caused by the Stolen Records for charges that were not initiated with the

Settlement Class Member's authorization. Settlement Agreement at ¶ 2.1(b). Settlement Class

Members will be eligible to make a claim for all such out-of-pocket losses that already occurred,

or in the future do occur, during the period beginning August 24, 1998, until and including

December 31, 2010. Certegy shall pay such claims on a first claim received basis—i.e., when

Certegy receives all required documentation. Settlement Class Members who are reimbursed for

any such losses shall also be entitled to receive one (1) additional year of Credit Monitoring, in

addition to any other benefits they may be entitled to under the terms of the settlement. Certegy

has agreed to make cash reimbursement payments to said Settlement Class Members up to the

total amount of $4 million.

**C.      Cash Reimbursement of Checking Account and Credit Monitoring Expenses.**

Settlement Class Members are also entitled to recover, in addition to the other relief

provided pursuant to the Settlement Agreement, cash re-imbursement of:  (1) up to $40 for costs

---

Agreement would be $504,900,000 ($4.95 X 24 months = $118.80 for 2 years; 4.25 million
Settlement Class Members X $118.80 = $504,900,000).  This does not mean that Certegy is
required to spend that amount, nor does it mean that all Settlement Class Members will file a
claim for it.  Rather, it is an estimate of the value created by the settlement for the benefit of
Settlement Class Members.

[5] Credit Card Consumer Claimants, except those that reside in New York, must exhaust the
$10,000.00 in credit insurance included with the Credit Monitoring described in ¶ 1.7 of the
Settlement Agreement.  For those Settlement Class Members who fail to elect to receive the
Credit Monitoring offered pursuant to the Settlement Agreement, said Settlement Class Members
shall be eligible to recover up to $10,000 in said identity theft losses.  Settlement Agreement at ¶
2.1(b)(iv).

incurred for printing paper checks with the opening of a new checking account; and (2) the cost of subscribing to credit monitoring in response to the Stolen Records, up to $15.00 per month, and up to a total cash reimbursement of $180.00 for said credit monitoring services.  Settlement Agreement at ¶ 2.1(c).  Certegy shall make such cash reimbursement payments to said Settlement Class Members up to a total of $1 million.

  **D.**  **Enhanced Security Measures**.

  Certegy Check has made changes in its policies and practices that satisfy Representative Plaintiffs that Certegy Check has made an adequate supplementation to its security in response to the theft of the Stolen Records.  Settlement Agreement at ¶ 2.2.  Co-Lead Settlement Class Counsel have learned, through the depositions of two high-level employees, Mario Herranz, Assistant Vice President of Human Resources for Certegy, and Karen Wittlinger, Chief Information Security Officer for Fidelity National Information Systems, that substantial steps have been taken in this regard.  These include the fact that Certegy Check has, at substantial expense of time, money, and effort, implemented the following policies and procedures:  (1) re-circulated its Security Awareness policies to all active employees; (2) administered a Security Awareness test to all active employees and new hires; (3) re-certified background checks, including criminal background and credit checks, on all database administrators in Certegy Check's employment; and (4) committed to an annual SAS-70 audit to ensure that adequate data security measures are in place.  Certegy Check has proffered documentary evidence of these changes to Representative Plaintiffs and Co-Lead Settlement Class Counsel, along with the testimony provided through the above-referenced depositions.[6]  While not lending itself to a

---

[6] Certegy, in addition to the steps referenced in the Settlement Agreement, has also voluntarily taken the following steps:  (1) annual credit checks on certain employees; (2) implemented a

financial calculation, this injunctive relief is unquestionably valuable to Settlement Class Members in its immediate and long-term effects due to their likely repeat usage of Certegy services through their day-to-day check and credit card activities.

### E.    Dispute Resolution.

Certegy shall also provide for a dispute resolution mechanism through JAMS/Endispute for any Settlement Class Member who files a claim for cash reimbursement of identity theft losses and/or check replacement and credit monitoring services expenses, but whose claim is denied by Certegy.  Settlement Agreement at ¶ 2.1(d).  Costs of said dispute resolution processes shall be paid for by Certegy, but any legal fees or expenses incurred during the process shall be paid for by the party incurring them.

### F.    Other Benefits.

The costs associated with Notice of the settlement, Claims Administration, and attorneys' fees, costs, expenses, and incentive awards, will be paid for by Certegy separate and apart from, and in addition to, the above-listed benefits and, thus, will not diminish the Class recovery.

In sum, the Settlement Agreement provides valuable and substantial benefits to the Settlement Class.

---

policy whereby the use of laptops and flash drives, the ability to burn CDs and DVDs, and the copying of sensitive personal and financial information has been eliminated and prohibited; (3) ensuring the encryption of all laptops on a company-wide basis; (4) implementing an e-mail filtering program whereby employee e-mails are scanned to ensure that sensitive personal and financial information is not communicated; and (5) established a dedicated securities initiatives project team to oversee responsive security measures and consider further improvements in data security measures on an ongoing basis.  These measures remain subject to amendment, including supplementation, replacement, or discontinuance in favor of other solutions, as Certegy continues to assess its security program.

## V.       NOTICE

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . ." F.R.C.P., Rule 23(e)(1)(B). The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement Class of their rights. The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)).

In addition, the contents of the proposed Notice are sufficient. The Notice must fairly describe the litigation and the proposed settlement and its legal significance. *See, e.g., Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]"); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained."). The notice program proposed here clearly meets these standards. *See* Affidavit of Shannon R. Wheatman, Ph.D. on Settlement Notices and Notice Plan, attached hereto at Exhibit 3.

### A.       Contents of the Notice.

The proposed Summary Notice and the proposed long form Notice (hereinafter, collectively, "Notice") are attached hereto as part of the Notice Plan at Exhibit 2. A nationally-

recognized notice specialist, Hilsoft Notifications, has developed the comprehensive Notice Plan. *See* Notice Plant, attached hereto as Exhibit 2.  The Notice includes the Class Definition and other identifying information, a fair summary of the parties' respective litigation positions, the general terms of the settlement as set forth in the Settlement Agreement, instructions for opting out of or objecting to the settlement, the process and instructions for making a claim, and the date, time, and place of the Final Fairness Hearing. Settlement Agreement at ¶ 3.1(c).  The date that the Court sets for the Final Fairness Hearing should take into consideration that the Class Action Fairness Act requires that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C.A. §1715(b)]". 28 U.S.C.A. §1715(d). Notice to the State Attorneys General will be made as explained below in subsection C, and the notifications to Federal and State officials required under the Class Action Fairness Act must be served within 10 days of this filing.

### 1.      Opting Out.

Any member of the Settlement Class who wishes to opt out of the Settlement Class must individually sign and timely submit written notice ("notice of exclusion") clearly manifesting his or her intent to be excluded from the Class. Settlement Agreement at ¶ 4.1. The notice of exclusion must be mailed to the Post Office Box designated by the Claims Administrator and must be postmarked at least twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing. *Id.*

### 2.      Objections.

Any member of the Settlement Class who wishes to object to the settlement must submit a timely written notice of his or her objection, which will set forth the reasons for the objection,

and further state whether the objector intends to appear at the Final Fairness Hearing.  *Id.* at ¶ 5.1.  The objection also must provide:  (i) the objector's full name, address, telephone number, and e-mail address; (ii) information identifying the objector as a Settlement Class Member, such as (a) proof (*e.g.*, a letter from Certegy or the objector's bank, credit card company, or other financial institution) that their personal financial information may have been compromised, or (b) an affidavit setting forth, in as much detail as the objector can reasonably provide, (1) the fact of receiving a letter from Certegy, or their bank, credit card company, or other financial institution, indicating that their personal financial information may have been compromised, and the approximate date of said receipt, and (2) documentation supporting the objector's allegation of damage, if the objector is making such an allegation; (iii) a written statement of all grounds for the objection accompanied by any legal support for the objection; (iv) copies of any papers, briefs or other documents upon which the objection is based; (v) the identity of all counsel representing the objector; (vi) the identity of all counsel representing the objector who will appear at the Fairness Hearing, if any; (vii) a list of all persons who will be called to testify at the Fairness Hearing in support of the objection, if any; (viii) a statement confirming whether the objector intends to testify at the Fairness Hearing; (ix) a list of other class action cases in which the objector or objector's counsel have appeared as settlement objectors or as counsel for settlement objectors in the preceding five (5) years; and (x) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such documentation).  *Id.*  To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Middle District of Florida, Sam M. Gibbons U.S. Courthouse, 801 North Florida Ave., Tampa, Florida, 33602, at least twenty-one (21) days prior to the date set in the Notice for

the Final Fairness Hearing, and served therewith upon both of the following:  Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and counsel for Certegy, Mark S. Melodia, Reed Smith LLP, Princeton Forest Village, 136 Main Street, Suite 250, Princeton, NJ 08540.  *Id.*

### B. Publication of Notice.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). This standard is met in the present matter.

For those Bank and Credit Card Consumer Members who Certegy has a current mailing address, Notice shall be provided in postcard form via first-class direct mail.  Settlement Agreement at ¶ 3.2.  The Notice program otherwise shall be by publication in print, which shall run in a range of consumer magazines, newspapers, and/or newspaper supplements to be designated by the Notice Specialist and approved by the Court.  *Id.*  Further, a settlement website will be established, which will provide access to the Summary Notice, Long Form Notice, and Proofs of Claim approved by the Court, as well as the Settlement Agreement, along with a dedicated toll-free help line where Settlement Class Members can request said documents.  *Id.* at ¶¶ 3.1(c), 3.2.  The Notice provides Settlement Class Members with the requisite information to make an informed decision regarding their rights. Notice need only be made by the "best practicable" means. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable.  The Notice Plan here is designed to reach the maximum number of Class Members, and it is

Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation.

### C.   Notifications to Appropriate Federal and State Officials.

Pursuant to the Class Action Fairness Act, within 10 days of this filing, Certegy must serve notice of the proposed settlement on the appropriate Federal and State officials. 28 U.S.C.A. §1715. The relevant provision of the Class Action Fairness Act states as follows:

(b) IN GENERAL.--Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement consisting of--

(1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);

(2) notice of any scheduled judicial hearing in the class action;

(3) any proposed or final notification to class members of--

 (A)(i) the members' rights to request exclusion from the class action;  or

  (ii) if no right to request exclusion exists, a statement that no such right exists;  and

 (B) a proposed settlement of a class action;

(4) any proposed or final class action settlement;

(5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;

(6) any final judgment or notice of dismissal;

(7)(A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official;  or

(B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement;  and

(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

28 U.S.C.A. §1715(b). In this case, because Certegy is not "a Federal depository institution, a State depository institution, a depository institution holding company, a foreign bank, or a nondepository institution subsidiary of the foregoing," 28 U.S.C.A. §1715(a)(1)(B), the appropriate Federal official is the Attorney General of the United States. 28 U.S.C.A. §1715(a)(1)(A). Because the Settlement Class includes Class members from the 50 states, the appropriate State officials are the 50 State Attorneys General. 28 U.S.C.A. §1715(a)(2) ("If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general.").

## VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

Courts look favorably on the settlement of disputed claims, and settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Under Rule 23(e)(1)(A), however, the court still "must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." F.R.C.P., Rule 23(e)(1)(A).

Preliminary approval is the first of a two-step process for approval of a proposed class action settlement.  In this first step, the court simply determines whether the proposed settlement falls within the range of possible approval and whether it is reasonable to issue notification to

class members of the settlement's terms.   In the second step, after notice to the class and an opportunity is provided for absent class members to object or otherwise be heard, the court must determine whether to grant final approval of the settlement as fair, reasonable and adequate, under the rules of civil procedure. *See Manual for Complex Litigation (Third)* § 30.41 (1995); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.25 (4th ed. 2002); *see also Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. 2007); *In Re Managed Care Litig.*, 2003 WL 22218324 (S.D. Fla. 2003); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540 (D. Colo. 1989), *appeal dismissed*, 936 F.2d 582 (10th Cir. 1991).

Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member.   The purpose of preliminary approval is solely to communicate the proposed settlement to the class, to review and approve the proposed form of Notice to the class, and to authorize the manner and form of dissemination of the notice. *See Manual for Complex Litigation (Third)* § 30.41, at 236–37 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval, the court should direct that notice" issue and should schedule a final approval hearing).   The proposed settlement clearly satisfies all of the factors required for preliminary approval under Rule 23.

Where, as here, the proposed settlement is the result of serious, arm's-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, and does not grant preferential treatment to the Representative Plaintiffs or other segments of the class, courts generally grant preliminary approval and direct that notice of a formal fairness hearing be given to class members. *See Williams Foods, Inc. v. Eastman Chemical Co.*, 2001-2

Trade Cases (CCH) ¶ 73,414, 2001 WL 1298887 (D. Kan. Aug. 8, 2001); s*ee also In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459-60 (D. Md. 1987); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).

Although not required at this stage, the settlement also meets the standard for final approval as being fair, reasonable and adequate under F.R.C.P. Rule 23(e)(1)(C), including the Eleventh Circuit's standard of being "fair, reasonable and adequate," and not the product of any collusion between the parties.  *See Strube v. Am. Equity, Investment Life Ins. Co.,* 158 Fed. Appx. 198, 2005 WL 3160265 (11th Cir. Nov. 29, 2005); *Diaz v. Hillsborough County Hosp. Auth.,* 2000 WL 1682918 (M.D. Fla. Aug.7, 2000).  While meeting the higher standard of being fair, reasonable and adequate—as opposed to meeting the standard of being within the range of fair, reasonable and adequate—is not required at this time, it is offered as informative.

For final approval, the court must examine the following factors when determining whether to approve a class action settlement:

(1) the terms of the settlement compared to the likely rewards the class would have received following a successful trial of the case;

(2) the complexity, expense, and duration of the litigation;

(3) the judgment of experienced counsel for the parties;

(4) the stage of the proceeding at which the settlement was achieved; and

(5) the substance and amount of opposition to the settlement.

*Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, 2007 WL 2781105, *2–3 (M.D. Fla. 2007) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1330–32 (5th Cir. 1977)).  The substance and amount of opposition to the settlement can only be determined after notice has been accomplished. Thus, this factor is not analyzed here.  Without limiting the briefing which will be made in support of final approval, as shown by the following analysis of the remaining factors, a final approval

analysis also shows that the settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.

### A. The Terms of the Settlement Compared to the Likely Rewards the Class Would Have Received Following a Successful Trial of the Case.

"A fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73 (citations omitted). The groundbreaking settlement at issue here paves new ground. With the threat of future harm to Settlement Class Members' personal and financial interests, the Litigation presents claims for what some may view as a unique form of damages. Yet, the settlement provides innovative relief. Its terms examine and reasonably provide for reimbursing Settlement Class Members for any losses they have already suffered, or may suffer in the future, and provides security against a heightened risk of identity theft, in addition to the relief provided by the enhanced security measures being implemented by Certegy on a going-forward basis.

The settlement provides substantial benefits in contrast to the possibility of no relief should the claims of Representative Plaintiffs be denied; the Settlement Agreement is a reasonable compromise of Settlement Class Members' claims. With an approximate value of available benefits of over $500 million, against the vagaries of litigation, the recovery under the terms of the Settlement Agreement is necessarily fair and reasonable. Thus, this factor favors approval of the settlement.

### B. The Complexity, Expense and Likely Duration of the Litigation.

Representative Plaintiffs and Co-Lead Settlement Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Certegy through motion practice, discovery, trial, and potential appeals. The Representative Plaintiffs believe that the claims asserted in the litigation have merit. However,

Co-Lead Settlement Class Counsel have taken into account the uncertain outcome and the risk of further litigation. Certegy has aggressively maintained its positions regarding liability and damages. It denies both. Co-Lead Settlement Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. In fact, briefing has already occurred in two cases on Certegy's motions to dismiss. Given the nature of the case, it is almost assured that any decision on the merits would be appealed, which would then cause further delay as it would require briefing, oral argument (if requested by the appeals court), and awaiting a decision. In contrast, the settlement provides for significant benefits for the members of Settlement Class without the delays described herein. Due to the significant risks in this litigation and the uncertainty of prevailing on the merits and of establishing damages, this factor favors approval of the Settlement Agreement.

### C. The Judgment of Experienced Counsel for the Parties.

"The former Fifth Circuit in *Cotton* stated that, in the 'absen[ce] of fraud, collusion or the like,' the court is 'entitled to rely upon the judgment of experienced counsel for the parties' and 'should be hesitant to substitute its own judgment for that of counsel.' *Bragg*, 2007 WL 2781105, at *3 (citing *Cotton,* 559 F.2d at 1330). Co-Lead Settlement Class Counsel, in their experience, are of the opinion that the Settlement Agreement provides substantial relief and benefits to Settlement Class Members. Given the absence of any fraud or collusions among the Settling Parties here, this factor favors approval of the Settlement Agreement.

### D. The Stage of the Proceedings at Which the Settlement was Achieved.

On October 29, 2007, the Court ordered the consolidation of the *Beringer* and *Lockwood* cases. On December 3, 2007, the Court transferred *Sellers v. Certegy Check Services, Inc.*, Case No. 07-CV-01020 (M.D. Fla.), to this division. Outside of this District, three other cases are also

currently pending against Certegy concerning its conduct in this litigation: *McCall v. Certegy Check Services Inc.*, Case No. 4:07-0578-CV-W-FJG (W.D. Mo.); *Borreson v. Sullivan, et al.*, Case No. CV-07-05309 (C.D. Cal.); and *Jaramillo v. Certegy Check Services, Inc.*, Case No. 07-CV-5018 (N.D. Ill.). On November 5, 2007, Certegy filed a motion to dismiss the action in *Borreson*; said motion is still pending. On December 12, 2007, Certegy filed a similar motion to dismiss in *McCall*, which is also still pending. Counsel for Plaintiffs and counsel for Certegy began discussing the possibility of settlement at an early stage of the litigation. In light of these settlement discussions, both the time for Certegy to answer the Complaints, and the time by which Plaintiffs were to file their motion for class certification, have been extended on several occasions.

Co-Lead Settlement Class Counsel pursued discovery from Certegy. Valuable informal discovery occurred during the negotiation of the Settlement Agreement and it was appropriately targeted at information relevant to the settlement. *See* Manual for Complex Litigation, Fourth, at § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation, Fourth, at § 11.423. Indeed, to further such ends, Courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.*

Significantly, additional confirmatory discovery has been conducted by Co-Lead Settlement Class Counsel through the depositions of two high-level employees, as stated above. Through these depositions, it was learned that, as Certegy had previously represented, it has revised its employee certification and training procedures, and has implemented substantial

security enhancements.  Upon review of the revised procedures, and independent effort on their part, Co-Lead Settlement Class Counsel have determined that the information learned through the representations made during the negotiations leading up to the Settlement Agreement, and the confirmatory discovery conducted in conjunction herewith, are true and support the settlement.

This factor also favors approval of the Settlement Agreement.

## V.   CONCLUSION

As the above analysis shows, the Settlement Agreement is clearly within the range of final approval. Therefore, Representative Plaintiffs, individually and on behalf of the proposed Settlement Class, pray that this Honorable Court enter an order:

(a)   granting class certification of a Settlement Class as requested herein;

(b)   appointing Ben Barnow, Lance A. Harke, and Ralph K. Phalen as Co-Lead Settlement Class Counsel and appointing plaintiffs Linda Beringer and Dana M. Lockwood as Representative Plaintiffs;

(c)   preliminarily finding that the Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Class;

(d)   authorizing the Notice of class certification and preliminary approval of settlement to the Settlement Class in the manner set forth in the Settlement Agreement and in the forms attached hereto at Exhibit 2;

(e)   appointing Hilsoft Notifications, Souderton, Pennsylvania, as the Notice Specialist;

(f)   appointing Epiq Systems Class Action & Claims Solutions as the Claims Administrator;

(g)   setting a date for the Final Fairness Hearing to consider entry of a final order approving the Settlement Agreement and the request for attorneys' fees, costs, and expenses; and

(h)   granting such other and additional relief as the Court may deem just and appropriate.

Dated:  January 24, 2008                          *Co-Lead Settlement Class Counsel*


     /s/  Ben Barnow
Ben Barnow
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
(312) 621-2000


     /s/  Lance A. Harke
Lance A. Harke
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, FL 33130
(305) 536-8220


     /s/  Ralph K. Phalen
Ralph K. Phalen
Ralph K. Phalen, Attorney at Law
1000 Broadway, Suite 400
Kansas City, MO 64105
(816) 589-0753

**List of Exhibits**

Exhibit 1:   Settlement Agreement

    Exhibit A:   [proposed] Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing

    Exhibit B:   [proposed] Final Judgment

    Exhibit C:   Bank Monitoring Program

    Exhibit D:   JAMS/Endispute Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses—Minimum Standards of Procedural Fairness

Exhibit 2:   Notice Plan

    Exhibit 1:   Hilsoft Notifications' C.V.

    Exhibit 2:   Drafts of Notices

    Exhibit 3:   *Parade* and *USA Weekend* Newspaper List

    Exhibit 4:   List of Press Outlets

Exhibit 3:   Affidavit of Shannon R. Wheatman, Ph.D. on Settlement Notices and Notice Plan