IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| LINDA BERINGER, individually and on behalf of all others similarly situated | )<br>)<br>) | |
| Plaintiff, | )<br>) | No. 8:07-cv-01657-SDM-MSS |
| vs. | )<br>) | |
| CERTEGY CHECK SERVICES, INC. | )<br>) | |
| Defendant | )<br>) | |

| | | |
|---|---|---|
| DANA M. LOCKWOOD, individually and on behalf of all others similarly situated | )<br>)<br>) | |
| Plaintiff, | )<br>) | No. 8:07-cv-01434-SDM-TGW |
| vs. | )<br>) | |
| CERTEGY CHECK SERVICES, INC. | )<br>) | |
| Defendant | )<br>) | |

NOW COMES Ed Ellis ("Objector") by and through his undersigned counsel, and hereby files these Objections to the Proposed Settlement of this Class Action and, in support thereof, states as follows:

**PROOF OF MEMBERSHIP IN CLASS**

Objector lives at 6580 Woodhawk Rd. Cleveland Ohio 44124. His telephone number is (440) 337-9080. His email address is edellis@castlerockelectric.com. Attached hereto as Exhibit A is an affidavit attesting to his membership in the Class.

1

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he intends to appear, through the undersigned counsel, at the Fairness Hearing presently scheduled for August 22, 2008, at 10:00 AM at the Sam M Gibbons U.S. Courthouse, 801 North Florida Ave. Tampa Florida 33602. He requests 20 minutes to speak.

## OBJECTIONS

There is no settlement fund in this case except for the Five Million Dollars ($5,000,000) that the defendant has committed to make available to certain members of the Class upon their compliance with the requirements set forth in the settlement agreement. They have agreed to make up to $1 million available on a "first-come, first-served" basis for check printing costs (up to $40 per person), or the cost of credit monitoring )(up to $180, but no more than $15/month) spent before Triple Alert credit monitoring became available. Notice, §18, Settlement Agreement § 2.1 (c). They have also agreed to make up to Four Million Dollars ($4,000,000) available as compensation for identity theft reimbursement upon submission and approval of a claim. Settlement Agreement § 2.1 (b)(iv). Although the Settlement Agreement does not state how much the attorneys will be requesting in fees, the Notice provides that they will ask for fees, costs, and expenses of up to $4.3 million. Therefore, they are asking the court to award them in guaranteed dollars, almost as much as the Class Members will get if every dollar set aside by defendants is actually paid. This is unconscionable. It is axiomatic that the fee must bear some reasonable relationship to the benefits derived by the class.

It is not presently know how much of this $5 million will be paid out; however, even if the entire $5 million is paid out to Class Members (which is highly unlikely) the

$4.3 million fee is too high in comparison the potential benefits. $4.3 M is **86%** of the total amount that may be paid out to the class. Even if the fee amount ($4.3M) is added to the potential payout to the class ($5M), of the resulting total of $9.3 million, Class Counsel is requesting over **46%** of that total. There is virtually no authority for a 46% fee in this Circuit, much less an 86% fee. The Eleventh Circuit has stated that "we believe that the percentage of the fund approach is the better reasoned [approach] in a common fund case….The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards." <u>Camden Condominium Association, Inc. v. Dunkle</u> 946 R. 2d 768, 774 (1991). The Eleventh Circuit sometimes uses a lodestar method, <u>See</u> *United States ex rel. Jacobs v. Patrol Servs.*, 202 Fed. Appx. 357 (11th Cir. 2006). As of the Objection deadline (August 1), there has been no fee petition filed, and no disclosure of lodestar (much less detail); accordingly, neither the Court, nor any Objector has the means to consider a lodestar crosscheck. Therefore, Objector reserves the right to supplement these objections when those details are finally disclosed.

In the instant case, the Court cannot ascertain the value of the relief until it knows (1) how many class members take advantage of the offered relief, and (2) how much of the $5 million that is available to class members is actually used and how much reverts to the Defendant. With no oversight concerning the number of claims filed and the amount of money paid out, and no *cy pres* provision to deal with a shortfall between the amount available and the amount actually paid out, the Court has no basis for ascertaining what the relief is worth and, thus, no basis for deciding if the settlement is fair. Of course, without knowing what the relief is worth, the Court also will have no basis for deciding what amount of attorneys' fees is fair. Without knowing the value of the settlement to

3

Class Members, the Court cannot make an independent finding about whether the Settlement is fair.

Part of the difficulty in identifying the value (and proper attorneys fee) of a settlement like this is the uncertain and low redemption rate -- the "take rate." Most claims will be made within 30 or 90 days of the Final Order settling this case. In no event will a claim be allowed after March 31, 2011. Settlement Agreement § 2.1 (b).  The Court should note that there is a provision for the Claims Administrator to prepare reports as to claims and distributions and to provide such reports to Class Counsel. Settlement Agreement §8.1.  However, there is **NO** requirement that this information be shared with the Court.  The Court should insist on receiving interim reports from Class Counsel concerning the number of people signing up for credit monitoring, and the amount of money paid out so that there is a way for the Court, the public and member of the Class to know how much relief is actually be delivered to the Class Members.

The settlement value is currently unknown.  There is no way to predict how many people will take advantage of the offered benefits and the amount of money that will actually be paid out to class members.  It could be One Hundred Dollars ($100.00) or Five Million Dollars ($5,000,000.00) or anything in between.  There is no way to currently estimate that.  The Court should defer ruling on the fee requested until after there is a report to the Court concerning the real value (or even the estimated value) of the settlement.  Only then, after the Court knows the estimated amount actually received by the Class, can the Court judge the relationship between the settlement and the fee.

One of the most instructive cases in this area is a pre- CAFA case, In re: Excess Value Insurance Coverage Litig., No. M-21-84, MDL-1339 (S.D.N.Y. Nov.2, 2005).

The Court therein pointed out that under CAFA, 28 U.S.C. § 1712 (a), the attorneys' fee award is to be based upon the value to members of the Class of coupons actually redeemed.  It therefore waited until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate.  Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons.  The court  awarded counsel $2.4 Million in fees.   Similar logic should be employed here in order to avoid the embarrassment of a fee that greatly exceeds benefits paid to the class.

This court should also take into account the recent Second Circuit case of *Arbor Hill* in establishing the proper fee. In *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 484 F.3d 162 (2d Cir. 2007), the Second Circuit elaborated on the "preference for moderation" it had articulated in *Goldberger v. Integrated Resources Inc.* 209 F.3d 43 (2nd Cir. 2000) seven years earlier.   In *Arbor Hill* (a case on which retired Justice Sandra Day O'Connor sat by designation), the court emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Id.* at 169, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.*at 164.  The import of *Arbor Hill* is that, assuming that there is a so-called "range of reasonableness," the fee awarded must be at the **lower** limit of that range.  Therefore, this court needs to determine if $ 4.3 million is the "**minimum** necessary" to litigate this case.

5

Before *Arbor Hill*, district courts focused on the theoretical *upper limit* on attorney's fees, beyond which the fees would shock the conscience, violate the Rules of Professional Conduct, or otherwise be "absurd." *See In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d at 522* (describing requested fee of $609 million, which was almost ten times hourly rate, as "absurd"). An attorney's fee almost had to be grounds for professional discipline before a district court would lower it or deny approval to a motion for fees. In light of *Arbor Hill*, however, it is clear that the entire procedure that a district court should follow in trying to ascertain a minimum reasonable fee has fundamentally changed. Rather than starting with class counsel's requested amount of fees and (possibly) working down from there, a district court should instead start at zero and move up incrementally until it arrives at a number that is not unfair to the Class and to class counsel.

This Objector also strongly urges the Court to direct the parties to deliver any unclaimed monies from the $5,00,000 available to a *cy pres* fund for distribution to an organization that is involved in preventing identity theft or other worthwhile activities that relate to the problem addressed in this case.

Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

WHEREFORE, Objector respectfully requests that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

- C. Direct Class Counsel to serve their Fee Petition, with supporting documentation and detailed time records, to Objector in time to review and respond prior to the Court's decision on the request for fees.

- D. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

/s/ Luke Lirot            .
Luke Lirot, Esq.
Florida Bar Number 714836
2240 Belleair Rd. #190
Clearwater Florida 33764
(727) 536-2100
(727) 536-2110 (fax)
Luke2@lirotlaw.com
Counsel for Objector Ed Ellis

And for

Edward F. Siegel
(pro hac vice pending)
Attorney at Law
27600 Chagrin Blvd., Suite 340
Cleveland OH 44122
Telephone:           (216) 831-3424
Facsimile:           (216) 831-6584
Counsel for Objector Ed Ellis

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic filing using the CM/ECF filing system to Ben Barnow, Barnow and Associates, P.C., One North LaSalle St. Suite 4600, Chicago, Illinois 60602, and

8

Mark S. Melodia, Reed Smith, LLP, Princeton Forrestal Village, 136 Maine St. Suite 250, Princeton, NJ 08540, on this 1st day of August, 2008.

>                /s/ Luke Lirot            .
>                Luke Lirot, Esq.
>                Florida Bar Number 714836