FILED

08 AUG -4 PM 12: 05

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| LINDA BERINGER, individually and on Behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) CERTEGY CHECK SERVICES, INC., ) ) Defendant. ) | No. 8:07-cv-01657-SDM-MSS |
| DANA M. LOCKWOOD, on behalf of herself And all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) CERTEGY CHECK SERVICES, INC., ) ) Defendant. ) | No. 8:07-cv-01434-SDM-TGW |

### OBJECTION OF JOEL M. SHAPIRO
### AND NOTICE OF INTENT TO APPEAR

NOW COMES Class member Joel M. Shapiro, 7015 Milani Street, Lake Worth, FL 33467-5903, and objects to the proposed settlement of this class action and the request for attorney's fees. Mr. Shapiro received mailed notice of the class action settlement. *See Exhibit A.* Therefore, according to the Notice, he is in the Class. Mr. Shapiro authorized his attorney to file this Objection on his behalf. *See Exhibit B.*

Mr. Shapiro intends to appear and argue at the fairness hearing scheduled for August 22, 2008 through his undersigned counsel.

## I. The Proposed Settlement Is Inadequate For Claims Worth $100 to $1000 Per Disclosure.

The Complaint filed in this case makes claims for violations of the Fair Credit Reporting Act, and demands damages of not less than $100 and not more than $1000 for each violation of that Act. There are 8.5 million affected Consumer Reports, which means that, at a minimum, the value of this case is $850 million. The proposed settlement provides absolutely no monetary compensation to the vast majority of class members. Only those class members who can prove damages caused by identity theft may receive compensation of up to $20,000 per claimant, with total payments capped at just $4 million. All other class members receive only credit monitoring or bank monitoring.

A settlement capped at $4 million cash is *per se* inadequate in a case that demanded minimum statutory damages of $850 million.

## II. Attorney's Fees May Be No More Than Class Counsel's Unenhanced Reasonable Lodestar.

As recited in the Settlement Agreement, this case was filed following the public announcements in July 2008 that a Certegy employee "stole consumer records and sold them to a third party for marketing purposes." Settlement Agreement at p. 2. "Subsequently, a number of lawsuits were filed in federal court asserting claims against Certegy in relation to the Stolen Records." Id. Therefore, far from ferreting out or discovering the wrongdoing that gave rise to this lawsuit, Class Counsel merely recited reports gleaned from public media and sought to impose civil liability on Certegy for its employee's admitted wrongdoing. This did not involve a high-level of difficulty or risk.

This case settled within five months of its filing, a further indication of the relative ease of obtaining some settlement of this action. There was no motion practice or

2

discovery. There was never any question of whether Certegy would pay some amount as compensation for the wrongs to which it had admitted before this lawsuit was even filed. The only question was whether they would settle for a significant monetary payment, or for in-kind services and the ever-popular fallback of free credit monitoring, and whether the class members would receive a greater share of any monetary settlement than the lawyers. Undoubtedly, it would have required further and more aggressive litigation to produce a monetary settlement in the range of what would be fair and adequate in this case. Class Counsel opted to accept a settlement that would afford them generous attorney's fees, without a lot of work or risk.

Class Counsel intend to request attorney's fees in the amount of $4.3 million, a surely excessive amount for a little over a year's work in a lay-down case. The case of *Burlington v. Dague*, 505 U.S. 557 (1992) abolished contingency enhancements under federal fee-shifting statutes like FCRA. The Supreme Court in *Dague* reversed the district court's fee enhancement of just 25%. 505 U.S. at 567.

*Dague* also makes clear that the class' recovery was directly traded for the Defendant's agreement to pay excessive fees to Class Counsel. Certegy was certainly well aware of *Dague*, and therefore knew that their exposure for Class Counsel's fees was limited to their lodestar. Therefore, there must have been some consideration for Certegy's agreement to pay Class Counsel more than Certegy could ever be obligated to pay pursuant to FCRA. That consideration must have come in the form of diminished benefits to the Class.

*Dague* has been construed to apply to any case brought pursuant to a federal statute that contains a fee-shifting provision, like the DPPA. *See e.g., Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001)(noting that Supreme Court

in *Dague* noted Clean Water Act's similarity to all other federal fee-shifting statutes, and that "our case law construing what is a reasonable fee applies uniformly to all of them"). In *Murphy*, the Eleventh Circuit applied *Dague* to a case brought pursuant to ERISA and held that "a contingency fee enhancement is improper under ERISA's attorney's fee provision." *Id.*

The Eleventh Circuit in *Murphy* distinguished the result in that case from the result reached by the Seventh Circuit in two ERISA class actions that resulted in the creation of common funds. *See id.* at fn. 3 ("In permitting the enhancement, however, the Seventh Circuit made clear that the award in a common fund case is made pursuant to the principles of equity, and not under ERISA's fee provision.") Notably, the Court did not distinguish those cases on the grounds that they were class actions, but because they had created a common fund.

This case, clearly, has not created a common fund, and the attorney's fees will not be paid out of a common fund. Therefore, this case is not governed by the equitable considerations that have led courts to permit an award of an attorney's fee that includes a multiplier in common fund cases. *See e.g. Alyeska v. Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (noting that attorney's fees were paid "from the fund," which changed basis of fee from statute to equity). Class Counsel have not provided a principled basis for treating a class action brought pursuant to FCRA differently from an individual case brought under that statute. As *Murphy, supra*, makes clear, a prevailing plaintiff's attorney in an individual FCRA case who obtained a $1000 statutory damages award would be entitled to a fee no greater than his lodestar. Why, then, should an attorney who settles a FCRA class action for in-kind benefits receive more than his or her reasonable lodestar?

Class Counsel might suggest that an attorney who brings a FCRA class action must do more work and put more at risk than one bringing an individual case. But that is not necessarily true, as illustrated by this case. Class Counsel would have been required to expend the same amount of work in this case regardless of the number of other class members who might be bound by a judgment. The issues of law that are at the heart of this case are ones that would apply with as much force to the case of one individual as to a case brought on behalf of 8.5 million. Indeed, for the first seven months of this case's history, it was nothing more than an individual case seeking class action status, otherwise known as a putative class action. Moreover, in a case like this one that follows a defendant's public admission of wrongdoing, lawyers for a putative class of plaintiffs often have an even easier time of it than a lawyer for an individual, since the class lawyers are in effect selling global peace to the defendant, and the only issue is at what price.

### III. Agreeing Upon A Fee That Exceeds Defendant's Potential Liability Is Problematic and Suspect.

Even where the Defendant has agreed to pay Class Counsel's fees separately, it is axiomatic that a court has a duty to scrutinize attorney's fees regardless of their source, and regardless of whether they are to be paid separately by the defendant or taken from a common fund. "A district court is not bound by an agreement of the parties with regard to fees… The court must scrutinize the agreed-to fees … and not merely ratify a pre-arranged compact." Strong v. BellSouth Telecommunications, Inc., 137 F.3d 844, 849 (5th Cir. 1998). Accord, Rosenbaum v. Macallister, 64 F.3d 1439, 1442 (10th Cir. 1995) (objector may appeal award of attorney's fees "even when the defendant agrees to the amount of the fees in the settlement agreement"); Zucker v. Occidental Petroleum Corp.,

192 F.3d 1323, 1328-29 (9th Cir. 1999)(court's duty to scrutinize fee agreement exists independently of any objection). A court "is not bound by the agreement of the parties as to the amount of attorney's fees" and must not merely "ratify a pre-arranged compact." Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980).

If a court must scrutinize an agreed-upon fee, it must have some standard against which to measure the fee, independent of the agreement. Here, that standard is federal statutory fee-shifting jurisprudence. As the Ninth Circuit held in *Staton v. Boeing, supra*,

> The assumption in scrutinizing a class action settlement agreement must be, and always has been, that the members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high. If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.

327 F.3d at 964.

Here, Certegy agreed to pay Class Counsel a fee that is greater than Class Counsel could receive were it to win this case at trial, or to petition the court for fees as a prevailing party in the absence of an agreement. One must question why Certegy, with knowledge of the governing fee standards set forth above, would agree to overcompensate Class Counsel on fees.

Recently, 20 law professors with expertise in the area of legal ethics went on record to condemn the practice whereby a plaintiff's attorney directly negotiates his or fee with a defendant, and asserted that to do so is both a breach of the attorney's fiduciary duty and a violation of professional ethics. *See* September 17, 2007 letter to ABA Ethics Counsel attached hereto as *Exhibit C*. The law professors further contend that any amount not awarded to class counsel as attorney's fees becomes the property of the class, and should not revert to the defendant. *Id.*

Mr. Shapiro contends that Certegy's agreement to overcompensate Class Counsel in this case came at the expense of the class members. The $4.3 million that Defendant agreed to pay Class Counsel should be treated as the common fund for the benefit of the class, and Class Counsel should receive a reasonable percentage of that fund as a fee. The remainder should be paid to class members.

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed Settlement as inadequate, and/or award Class Counsel no more than its reasonable, unenhanced lodestar as attorney's fees, with the remainder of the amount Defendant has agreed to pay going to the class.

Joel M. Shapiro,
By his attorneys,

John J. Pentz, *pro hac vice*
Clasaxn@earthlink.net
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925

David M. Snyder, *designated local counsel*
David M. Snyder, P.A.
1810 South MacDill Avenue Suite 4
Tampa, Florida 33629-5960
Tel: (813) 258-4501
Fax: (813)258-4402
dmsnyder@dms-law.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing via first class U.S. mail on August 1, 2008 on the following counsel:

Ben Barnow
Barnow & Associates, PC
One North LaSalle St., Suite 4600
Chicago, IL 60602

Mark S. Melodia
Reed Smith LLP
Princeton Forrestal Village
136 Maine St., Suite 250
Princeton, NJ 08540

_____
John J. Pentz